## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 20 2015, 6:47 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

James T. Knight
Andrew A. Achey
Hillis, Hillis, Rozzi & Knight
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Roy G. Dinwiddie, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | May 20, 2015 <br><br> Court of Appeals Case No. 25A03-1405-CR-148 <br><br> Appeal from the Fulton Superior Court <br><br> The Honorable Wayne E. Steele, Judge <br><br> Cause No. 25D01-1203-FC-127 |

**Kirsch, Judge.**

[1] Roy E. Dinwiddie ("Father") failed to pay child support for a number of years and, following a jury trial, he was convicted of Class D felony nonsupport of a

dependent and Class C felony nonsupport of a dependent.[1]  The trial court ordered Father to serve an aggregate term of six years of incarceration for the two convictions.  He appeals and raises two issues that we restate as whether the trial court had jurisdiction to hear the case and whether his sentence was inappropriate in light of the nature of the offense and the character of the offender.  In addition, we *sua sponte* address the issue of whether it was error for the trial court to enter judgment on both the Class D felony and the Class C felony.

[2]     We affirm in part, vacate in part, and remand with instructions.

## Facts and Procedural History

[3]     Father and Patricia Dinwiddie ("Mother") married in November 1994.  During their relationship, they had four children, in 1993, 1996, 1998, and 2000.  In 2000, the family moved to Rochester, Indiana, which is in Fulton County.  In April 2002, the Fulton Circuit Court ("dissolution court") dissolved their marriage.   The decree adopted the recommendation of a custody evaluator and it "direct[ed] the placement of custody with [Father]," but further provided for equally shared parenting time, with each parent having the children three-and-one-half days per week, so long as the parents resided in the same school district.  *Appellant's App.* at 14-15.

---

[1] *See* Ind. Code 35-46-1-5(a).  We note that, effective July 1, 2014, a new version of this statute was enacted, but because Father committed the offense prior to 2014, we will apply the statute in effect that time.

[4] At some point, Father moved to Ossian, Indiana, in Wells County. A guardian ad litem was involved at the time, and recommended that the children reside with Father and that Mother exercise alternating weekend visitation. The parents followed this recommendation. However, in February or March 2005, a Wells County court removed the children from Father's care, and they were placed first with foster parents, then with Mother in May 2005.[2] In October 2005, the dissolution court granted temporary custody of the children to Mother, and there has been no custody order entered since that time.

[5] In July 2007, Mother filed a verified petition for child support in the dissolution court, pursuant to the provision of Title IV-D of the Social Security Act and with the representation of a Fulton County prosecutor. The petition alleged that Mother was a resident of Fulton County, Father was believed to be residing in Wells County, and no child support order was in effect at that time. *Id*. at 23. A hearing occurred in March 2008, at which the parties appeared, and the trial court ordered Father to pay support in the amount of $157 per week. *Id*. at 26. Father had paid no support from May 2005, when Mother when the children began residing with her, until the support order was entered in March 2008.[3] At the time of that order, Father was employed and, by income withholding order, paid child support and an additional amount to address the then-existing arrearage. Father made consistent payments until June of 2009,

_____

[2] Sometime in 2005, Mother remarried.

[3] Mother's second marriage ended at some point in 2008. Although she used a different name during her marriage, she resumed using the surname Dinwiddie after her dissolution. *Tr*. at 46.

when he was fired from his job. Since that time, Father has paid no child support and has not provided any other financial support for the children.

[6] In November 2010, the parties appeared for hearing in the dissolution court on Mother's petition for contempt for failure to pay child support. The trial court found Father in contempt for failing to pay child support and "for failing to comply with the Court's last order as it concerns production of job applications that he has submitted seeking employment[.]" *Id*. at 29-30. The November 2010 order stated that, to purge himself of contempt, Father was required to pay his child support obligation every week and provide the Prosecutor's Office, every other week, with a list of six job applications he has submitted. In addition, the dissolution court ordered that Father "shall provide a detailed list of all of the places he has sought employment in the last three months." *Id*. at 30. The matter was set for a compliance hearing in January 2011.

[7] At the January 2011 compliance hearing, at which both parties were in attendance, the dissolution court found Father to be in contempt and that he "has failed to comply with any of the terms and conditions of the Court's prior order." *Id*. at 32. Because he failed to pay any support since 2009, and failed to demonstrate efforts to seek employment as ordered, the trial court found that Father was "deliberately and willfully in contempt" and it ordered him to spend sixty days in the Fulton County jail. *Id*. In September 2011, another "hearing on contempt" occurred, and both Mother and Father were present. *Id*. at 35. The dissolution court again found Father in contempt, and it ordered sixty days jail time, but suspended it pending compliance with his child support

obligation. The dissolution court ordered Father to notify the Title IV-D Office of any change of address or any change in employment status and directed him to "keep a diary/log of his attempts to secure employment and be prepared to present the same to the Court at compliance hearing. The Court anticipates that [Father] will make at least two contacts per week in efforts to secure employment[.]" *Id*. at 36. By February 2012, Father's support obligation was in arrears in the amount of $20,590.66. *Id*. at 51.

[8] In March 2012, the State charged Father in the Fulton Superior Court with Count I, Class D felony nonsupport of a dependent, and Count II, Class C felony nonsupport of a dependent in an amount greater than $15,000.00.[4] *Id*. at 2-3. In June 2013, Father filed a motion for change of venue from the judge, which was heard and denied in July 2013. *Id*. at 8.

[9] At the March 2014 jury trial, the State introduced evidence of the dissolution court's contempt proceedings, including (1) the dissolution court's orders that found Father in contempt and directed him to produce reports every other week of attempts to find employment, (2) arrearage computation summaries; and (3) Father's payment history as reflected in the county's child support docket.

---

[4] We note that the charging information is not included in the record before us, but the chronological case summary reflects that Father was charged with nonsupport in an amount in excess of "$10000." *Appellant's App*. at 1; *see also Appellee's Br* at 1. However, Indiana Code section 35-46-1-5 was amended effective May 2001 to substitute $15,000 for $10,000; thus, we view the CCS's reference to $10,000 as a clerical error. In accord with this conclusion, the State's opening statement at trial reflects that it was charging Father with a Class C felony for failing to pay in excess of $15,000. *Tr*. at 31.

[10] During Mother's testimony, she indicated that, following a Department of Child Services proceeding against Father in Wells County occurring in February 2005, she sought and obtained a modification of custody in October 2005 in the dissolution court. She stated that she received no support or financial assistance of any kind from Father until she obtained the $157 weekly support order in March 2008. Father quit paying support in June 2009, and thereafter she sought enforcement of the support order in the dissolution court. Mother testified that at all times she had remained employed, usually holding multiple part-time jobs.

[11] During Father's testimony, he admitted that he did not pay any child support between February 2005[5] and March 2008. After a support order was entered in March 2008, Father paid support via income withholding order, and paid an additional $11.00 per week toward the arrearage, from March 2008 to June 2009, when he was terminated from his employment. He paid nothing in child support after June 2009 and provided no financial support of any kind since that time. Upon cross examination, Father acknowledged that he has never accepted the legality of Mother having custody and, consequently, has never considered the March 2008 support order to be a valid order. Father testified that he was incarcerated for contempt for sixty days starting January 31, 2011, was incarcerated for an unrelated criminal matter for sixty days beginning on

---

[5] Some portions of the record indicate that Mother took custody of the children in May 2005. However, Father testified that May is not when Mother assumed custody; he maintains the transfer of custody occurred on February 26, 2005, when he "delivered them to [Mother] here at the jail[.]" *Tr.* at 82.

June 3, 2011, and was incarcerated following a criminal conviction beginning on October 14, 2011, and remained in incarceration at the time of trial in March 2014. Father testified that he biked and walked all over Bluffton and Fort Wayne and applied for work at numerous restaurants and temporary employment agencies, which he specified by name, but stated that he could not find a job. He said that the reason he was given for not being hired was that none of the establishments were hiring. Father admitted that he did not ever provide the dissolution court of the Title IV-D office with reports and proof of job applications, as he had been ordered to do.

[12] The jury found Father guilty of the two felony counts of nonsupport of a dependent, as charged, and the trial court entered judgment of conviction on both the Class D felony and the Class C felony. In April 2014, following receipt of the presentence report and after receiving argument from counsel for each party, the trial court sentenced Dinwiddie to three years of incarceration on the Class D felony offense and to a concurrent six-year term on the Class C felony offense. The trial court characterized Dinwiddie's crimes as "particularly egregious," considering that they followed a series of attempts by the dissolution court, over the course of years, to get Dinwiddie to meet his child support obligation, including issuing several citations for contempt and eventually requiring Dinwiddie to serve sixty days in jail for contempt. *Appellant's App*. at 69. Father now appeals.

# Discussion and Decision

## I. Jurisdiction

[13] Father argues that the Fulton Superior Court "lacked subject matter jurisdiction over the nature of the case type of relief sought." *Appellant's Br*. at 5. Father's argument is rooted in the fact that at the March 2014 jury trial Mother testified that her address was in Logansport – which is Cass County – and "no questions were asked of the mother about where the children lived or when the children lived in Cass or Fulton County or when the mother moved from Fulton to Cass County" and that "there is nothing in the record to indicate where the children lived." *Appellant's Br*. at 7. Therefore, Father claims, the Fulton County Superior Court lacked subject matter jurisdiction.

[14] We find that Father's jurisdictional argument is misguided. Subject matter jurisdiction refers to the power of courts to hear and decide a class of cases. *Kondamuri v. Kondamuri*, 799 N.E.2d 1153, 1156 (Ind. Ct. App. 2003), *trans. denied*. The issue of subject matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on the court by the Indiana Constitution or by statute. *Id*. The State surmises that Father's claim is, in fact, one challenging venue, not jurisdiction. We agree. On appeal, he asserts, without citation to any authority, "When the State filed an information charging the Appellant with the Non-Support of a Dependent, jurisdiction is only proper in the county where the mother and children reside." *Appellant's Br*. at 6; *see also id*. at 4 ("[T]he mother of the children lived outside Fulton County, Indiana and the county in which the

children lived in was unknown or not clear from the record.")  Thus, Father's argument is not that the Fulton Superior Court lacked the power to hear the class of case or that the claim was outside of its scope of authority; rather, his claim is that Fulton County is not the proper county based on the residence of Mother and/or the children.

[15]  Indiana Criminal Rule 12 governs motions for change of venue from the county and provides that a motion be verified or accompanied by affidavit signed by the criminal defendant or prosecuting attorney setting forth facts in support of the constitutional or statutory basis or bases for the change.  Ind. Crim. Rule. 12(A).  Subsection (D) concerns timeliness of any such motion and states that in any criminal action, no change of venue from the county shall be granted unless filed within thirty days of the initial hearing, subject to certain exceptions not applicable here.  Ind. Crim. Rule 12(D)(1).

[16]  Here, according to the record before us, Father never filed a motion for change of venue from the county, nor did he voice any concern or make any allegation that Fulton County was not the proper county.[6]  Accordingly, any challenge to Fulton County as being improper venue is waived.  *See Wurster v. State*, 715

---

[6] We note that Father appears to have filed, in June 2013, a motion for change of venue from the judge, based on Father's belief that the trial judge was biased against him because Father had filed a federal civil lawsuit against the court and judge.  *See tr*. at 3.  Father asserted the bias was evidenced, in part, by the fact the trial court had granted, over Father's objection, the request filed by Father's attorney to withdraw his appearance.  It is not clear why Father objected to the withdrawal, given that Father was at that time pursuing a disciplinary action against his appointed attorney.  *Id*. at 5.

N.E.2d 341, 348 (Ind. 1999) (venue may be challenged at any time before verdict or guilty finding).

[17] Waiver notwithstanding, we find no error. Pursuant to Article 1, Section 13 of the Indiana Constitution, a defendant has "a right to a public trial 'in the county in which the offense shall have been committed[,]'" and this right is also codified at Indiana Code section 35-32-2-1. *Weiss v. State*, 735 N.E.2d 1194, 1196 (Ind. Ct. App. 2000) (citing *Wurster,* 715 N.E.2d at 349), *trans. denied*. However, venue is not an element of the offense, and the State may establish venue by a preponderance of the evidence and need not prove it beyond a reasonable doubt. *Neff v. State*, 915 N.E.2d 1026, 1032 (Ind. Ct. App. 2009) *adhered to on reh'g, trans. denied*; *see also Wurster*, 715 N.E.2d at 348 (circumstantial evidence may be sufficient to establish proper venue). To the extent that Father is claiming that the evidence was not sufficient to prove venue, the standard of review for a claim that the evidence was insufficient to prove venue is the same as for other claims of insufficient evidence. *Weiss*, 735 N.E.2d at 1196. That is, we will not weigh the evidence nor resolve questions of credibility, and consider the evidence and reasonable inferences therefrom supporting the trial court's determination. *Id*. We look to see if there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was tried in the proper venue. *Id*.

[18] Here, the evidence presented at trial indicates that, in 2007, when Mother filed her verified petition for child support, Mother was living in Fulton County. In March 2008, the Fulton County Circuit Court ordered Father to pay $157 per

week in child support.  Father abided by that order and paid support until June 2009, but made no payments thereafter.  The Fulton Circuit Court subsequently held several contempt and compliance hearings – in at least November 2010, January 2011, and September 2011 – and while Mother and Father were present for each those hearings, there is no indication that, at any time, Father raised any issue alleging that Fulton County was not the proper venue.  That Mother was residing in Logansport, *i.e.*, Cass County, at the time of trial in March 2014 is not evidence that she and the children were not living in Fulton County when Father was ordered to, but did not, pay any child support or provide any other financial support for the children from July 1, 2009 through February 1, 2012, the cut-off date chosen by the State for purposes of the charging information.  We find that the evidence supports the reasonable inference that the children resided with Mother in Fulton County during the relevant time frame.

## II.  Enhancement

[19]  Although neither party raises the matter, we *sua sponte* address the issue of whether the trial court erred when it entered judgment of conviction on both the Class D felony and the Class C felony.  Indiana recognizes "'a series of rules of statutory construction and common law that are separate and in addition to the protections afforded by the Indiana Double Jeopardy Clause.'"  *Sanjari v. State*, 961 N.E.2d 1005, 1007 (Ind. 2012) (quoting *Spivey v. State,* 761 N.E.2d 831, 834 (Ind. 2002)).  "Among these are situations in which an 'enhancement is imposed for the very same behavior or harm as another crime for which the

defendant has been convicted and punished.'" *Id*. (quoting *Richardson v. State,* 717 N.E.2d 32, 56 (Ind. 1999)). This principle is reflected in Indiana Code section 35-38-1-6, which prohibits the entry of judgment and sentence on separate counts charging both an offense and an included offense. *Id*.

[20] Turning to the statutory provision defining the offense of nonsupport of a dependent, Indiana Code section 35-46-1-5(a), it first states: "A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child, a Class D felony." The second part of the statute reads: "However, the offense is a Class C felony if the total amount of unpaid support that is due and owing for one (1) or more children is at least fifteen thousand dollars ($15,000)." Ind. Code § 35-46-1-5(a). The second sentence of the statute begins with "the offense," and it thus refers back to the Class D felony defined in the first sentence. As our Supreme Court recognized, "[T]he class C felony has no independent meaning without the underlying class D offense[.]" *Sanjari*, 961 N.E.2d at 1007. That is, the elements of the Class C offense include the elements of the Class D offense. *Id*. The statute establishes the Class C felony as an enhancement of the Class D felony, when the total amount of unpaid support equals or exceeds $15,000. *Id.; Porter v. State*, 935 N.E.2d 1228, 1231 (Ind. Ct. App. 2010). The offense of nonpayment of support is "singular in nature," penalizing knowing or intentional failure to provide support to the person's child, but that same offense may result in a stiffer penalty – *i.e.*, it may be enhanced – if the unpaid support equals or exceeds

$15,000. *Sanjari*, 961 N.E.2d at 1007. However, "the accumulation of support arrearage is not, in and of itself, a separate offense." *Id*.

[21] Here, the State charged Father with one count of Class D felony nonsupport of a dependent and, because the amount of arrearage totaled over $15,000, the State also charged one count of Class C felony nonsupport. As the State explained to the jury, the two counts were "the same basic crime, failing to support a dependent child," but were separated into two counts for purposes of addressing the level of the crime. *Tr.* at 30. That is, Count I covered the balance owed from July 1, 2009 to May 20, 2011, and encompassed a period during which his arrearage balance was less than $15,000, and thus a Class D felony; however, between June 1, 2011 and February 1, 2012, his arrearage reached a point that it exceeded $15,000, and became a Class C felony. *Id*. at 30-31. "[T]hat's why those charges are broken into two parts, but it is the same crime other than the level of the crime." *Id*. at 31. Based on the principles outlined in *Sanjari*, the Class C felony conviction constituted an enhancement of the Class D felony, not a separate offense, and it was error for the trial court to enter judgment on both the Class D felony and Class C felony convictions. Therefore, we vacate the Class D felony conviction and remand to the trial court for entry of judgment on the Class C felony conviction only.[7]

---

[7] We note that, in *Sanjari v. State*, the State charged the father of two daughters with two counts of Class D felony nonsupport of a dependent and two counts of Class C felony nonsupport of a dependent. The jury convicted him of all four counts, but the trial court entered judgment only as to the two Class C felonies. *Sanjari*, 961 N.E.2d at 1006. On appeal, our Supreme Court held that, while Indiana Code 35-46-1-5 permits a separate Class D felony conviction for nonsupport of each dependent child, only one such offense may be

# III. Sentence

[22] Father claims that his sentence is "manifestly unreasonable in light of the nature of the offense and character of the Appellant." *Appellant's Br*. at 1. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision is inappropriate in light of the nature of the offense and the character of the offender. *Flickner v. State*, 908 N.E.2d 270, 275 (Ind. Ct. App. 2009). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits for a broader consideration of the defendant's character. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *Former v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). The defendant has the burden of persuading this court that his sentence is inappropriate. *Flickner*, 908 N.E.2d at 275.

---

enhanced to a Class C felony where the unpaid support for one or more of such children is $15,000 or more. *Id.* Because only one of the two nonsupport offenses could be enhanced, the Court vacated one of the two Class C felony convictions and remanded with instructions that the trial court enter judgment as a Class D felony nonsupport for one child and as Class C felony nonsupport as to the other child. *Id*. at 1009. In the present case, the State charged one Class D felony, not two, as in *Sanjari*, and the trial court could enhance that one Class D to a Class C, but, in contrast to *Sanjari*, there were no remaining Class D nonsupport convictions on which to enter a second conviction.

[23] The State charged Dinwiddie with nonsupport of a dependent child under Indiana Code Section 35-46-1-5, which provides,

> A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child, a Class D felony. However, the offense is a Class C felony if the total amount of unpaid support that is due and owing for one (1) or more children is at least fifteen thousand dollars ($15,000).

[24] Having found that it was error to enter judgment of conviction of the Class D felony, we examine the appropriateness of the sentence imposed on the Class C felony conviction. A Class C felony carries a fixed term of between two and eight years, with the advisory being four years. Ind. Code § 35-50-2-6. Our Supreme Court has held that the advisory sentences are the "starting point" for a trial court in determining the length of a sentence. *Brown v. State,* 10 N.E.3d 1, 4 (Ind. 2014). Here, trial court sentenced Father to six years on the Class C, to be served concurrently with the three-year sentence on the Class D felony.

[25] In considering the nature of Father's offenses, when a parent fails to pay at least $15,000 in support, they commit Class C felony nonsupport of a dependent. Here, having failed to provide any financial support for his children since June 2009, Father's arrearage had surpassed $20,500 by February 2012. We have recognized, "The length of time for nonpayment of child support and the amount of arrearage go to the severity of the crime and the proper length of the sentence." *Jones v. State,* 812 N.E.2d 820, 826 (Ind. Ct. App. 2004). "[T]his crime per se evidences that hardship or sacrifice was suffered by the children or the custodial parent." *See Sanquenetti v. State*, 917 N.E.2d 1287, 1293 (Ind. Ct. App. 2009) (J. Vaidik, dissenting). Although Father was incarcerated for some

of periods of time, the evidence is that he did not meet, or even attempt to meet, his child support obligations when not in jail or prison. The nature of the offense supports a sentence above the advisory term.

[26] Our review of Father's character reveals a disregard for both his four children and for the law in general. Father testified that that he believed that the custody order, and the subsequent March 2008 child support order, were invalid and illegal. Although Father testified that he walked and biked all over Fort Wayne looking for work, and that he lived with family members because he could not afford housing, the State argued that Father's continued unemployment was a reflection of his unwillingness to subject himself to an income withholding order, which would force compliance with a support order that Father believed was illegal. As the trial court observed, there was no evidence presented that Father suffered from some physical or mental condition that prevented him from securing employment. We agree that the record suggests that his continued unemployment was deliberate and in defiance of the support order. The State also presented evidence that Father had a criminal history, including two prior misdemeanor convictions for driving under the influence and a conviction in May 2011 for Class D battery resulting in bodily injury on a child less than fourteen years of age, stemming from an offense that occurred in February 2005 involving his own child. Father has failed to convince us that his character warrants a reduction in his sentence. His six-year sentence was not inappropriate.

[27] Affirmed in part, vacated in part, and remanded with instructions.

Vaidik, C.J., and Bradford, J., concur.